In The United States District Court For The Middle District of Tennessee

Middle Division

Boaz Pleasant-Bey

RECEIVED

JUN 0 6 2019

U.S. DISTRICT COURT
MIDDLE DISTRICT OF TENN.

V. Case no.:

State of Tennessee, et al.,

———

Complaint

 

The Plaintiff submits this complaint pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 2000cc-1 (a)-(b) for violation of his Constitutional Rights, and RLUIPA rights. The Plaintiff thus respectfully submits the following deprivation of rights secured by the Constitution and laws of the United States and the following harm was ensued from the actions performed under the color of state law:

Grievance Remedies

The Plaintiff has carefully exhausted all of his grievance remedies concerning the claims brought before this Court in this cause.[5] At Trousdale Turner Correctional Center [T.T.C.C.], all the grievances made against C.C.A. are rejected by the Grievance Board, which deprives access to the institutional grievance procedure. [See Exhibit A-B, Grievances Against C.C.A. Rejected by T.T.C.C. Grievance Board]

---

[5] Trousdale Turner Correctional Center is highly understaffed and the grievance process is very far behind. There are many inmates, including the Plaintiff, who can testify that the grievance process is flawed due to the large amount of inmates at the prison and the issue of the prison being very understaffed. Many grievances are filed with no response at all from many inmates. Some grievances take an entire year for the Grievance Board to respond to. This violates TDOC Policy, and the Plaintiff has properly exhausted all his Grievance remedies in this matter concerning all the issues raised herein. Appendix A-B (Affidavits of Williams and Pleasant-Bey with Rejected Grievance Exhibits)

<u>Defendants</u>

*State of Tennessee[c]

The Secretary of State

State Capitol 1st Floor

Nashville, Tenn. 37243-1102

www.tennesseeanytime.org/govenor


*Core Civic America

 T.T.C.C.

 140 Macon Way

 Hartsville, Tenn. 37074


*Warden Rusty "Russell"[b] Washburn

*Chaplain Jon Shonebarger

 140 Macon Way

 Hartsville, Tenn. 37074



*Tennessee Department of Corrections

*Tony Parker, Commissioner of Tennessee Department of Corrections

*Director of Religious and Volunteer Services, Rev. B. Darnell[d]

 Rachel Jackson Bldg. 6th floor, 320 6th ave. North

 Nashville, Tenn. 37243

 correction.commissioner@tn.gov

---

[c] Under 42 U.S.C. § 2000cc-5 (7) permits the Plaintiff to sue a State and agencies of the State of Tennessee.

[b] In a Habeas Corpus proceeding, the district Court the District Court noted his name is Rusty but he uses "Russell".

[d] The Plaintiff requests for this Court to serve summons on the Defendants at their most current address online. The Plaintiff has the following addresses for the Defendants, but the addresses may be different in the directory online of which he does not have access to while he is incarcerated.

The Plaintiff has filed a lawsuit against the Tennessee Department of Corrections [TDOC] and other Defendants, currently pending before the United States District Court. See Pleasant-Bey V. TDOC, 6th Cir. No. 18-5424 (Apr. 4th 2019) The Plaintiff has also filed a claim against Shelby County and other Defendants. See Pleasant-Bey V. Shelby County, et al., 6th Cir. No. 18-6063 (Pending Appeal) The Plaintiff has filed another claim against Shelby County concerning his religious rights. See Pleasant-Bey V. Shelby County Government, et al., No.: 2:17-CV-02502-TLP-tmp (W.D. Tenn.) (Pending) The Plaintiff has not filed any frivolous claims in the United States District Courts of Tennessee.

## Religious Background of Plaintiff

The Plaintiff is a Muslim who follows the Qur'ān and Sunnah [Ways or Example] of Prophet Muḥammad صلى الله عليه و السلم. Prophet Muḥammad صلى الله عليه و السلم said that: "Marriage is half your Deen [Religion; Way of Life]." He صلى الله عليه و السلم also said: "There is no celibacy in Islām." In fact, marriage is considered to be one of the most sacred forms of ʿIbadah [Worship] in Islām. The Plaintiff believes that marriage is half of his Deen [Religion, Way of Life] despite his incarceration. The Plaintiff believes that having conjugal relations with his wife is an act of worship as well, a right in his faith for both him and his wife. Denying conjugal relations with his wife places a substantial burden upon his religious exercise. Appendix 1-17

The Plaintiff believes that the Prophet Muḥammad صلى الله عليه و السلم wore Khufain [Prayer Socks] while he was making Ṣalah [Prayer], and this is also a tradition that he must follow. Not being able to wear Khufain during Ṣalah places a substantial burden upon the Plaintiff's religious exercise because he is not in compliance with the practices of the Sunnah of Prophet Muḥammad صلى الله عليه و السلم. Appendix 1-17

The Plaintiff believes that eating is an act of worship in Islām once Bismillah [The Name of Allāh] is said over the food. The Plaintiff believes that he must fast during the Holy Month of Ramaḍān, eat traditional Ḥalal [Lawful] food during the Id Ul Fitr Feast at the completion of the Month of Ramaḍān, which is traditionally held from one to three days, and eat traditional Ḥalal food during the Id Ul Adha [Feast of Sacrifice]. Those Id Celebrations have a Ṣalah and Khutbah [Religious Sermon] that are traditionally held before the food is served. Also while fasting during the Holy Month of Ramaḍān, the Plaintiff believes he must eat traditional Ḥalal foods the entire month in order for the Fast to be in accordance with the Qur'ān and Sunnah. Prophet Muḥammad صلى الله عليه و السلم and his Companions all

ate dates, drank whole milk, ate honey, Ḥalal meats [Lamb, Chicken, Beef, and Fish] with vegetables and natural fruits [not processed foods] both before and after he fasted every day during the Holy Month of Ramaḍān. Appendix 1 - 17

Statement of Claim

The Plaintiff presents the following statement of claim against the above named Defendants in both their official and individual capacities:

Free Exercise Clause/RLUIPA

1.) The State of Tennessee, TDOC, Commissioner Parker, Rev. B. Darnell, CCA, Warden Washburn, and Chaplin Shonebarger all have granted the Plaintiff his right to be married while housed in the TDOC and CCA, but they have overwhelmingly placed a substantial burden upon his religious exercise of being married to his wife by totally banning him from performing his act of worship to have conjugal relations with his wife while housed in TDOC and TDOC CCA Contracted Prisons. The total denial of this act of worship has placed an overwhelming substantial burden upon his religious exercise of being married, and has caused him and his wife to be separated while he is incarcerated. 42 U.S.C. § 2000cc-1 (a)-(b); U.S. Const. Amend. 1; Appendix 1-17

2.) The Commissioner Parker, Rev. B. Darnell, Warden Washburn and Chaplain Shonebarger have all deprived the Plaintiff of his ability to purchase Khufain. The Plaintiff has submitted several requests concerning the Khufain, but those Defendants persisted in denying the Plaintiff the Khufain, which are part of the Sunnah of Prophet Muḥammad صلى الله عليه و السلم, who believed in the convenience of Ṣalah. The Plaintiff believes that he must wear the Khufain socks while making Ṣalah because the Khufain in part of the Sunnah of Prophet Muḥammad صلى الله عليه و السلم and denial of the Khufain places a substantial burden upon his religious exercise because he is not fully in compliance with the Sunnah of Prophet Muḥammad صلى الله عليه و السلم while making Ṣalah. 42 U.S.C. § 2000cc-1 (a)-(b); U.S. Const. Amend. 1; Appendix 1-17

3.) TDOC, Commissioner Parker, CCA, Rev. B. Darnell, Warden Washburn and Chaplain Shonebarger have all denied the Plaintiff the ability to purchase traditional Ḥalal Foods for the Id Ul Fitr and Id Ul Adha Feasts of 2018, or have donated to Trousedale Turner Correctional Center [T.T.C.C.] traditional Ḥalal Foods for the Id Ul Fitr and Id Ul Adha Feasts of 2018. They counseled the Id Ul Fitr and Id Ul Adha Ṣalah and Khutbah for 2018, and they fed the Plaintiff Ḥarām [Forbidden/Unlawful] Foods during those religious celebrations in place of the traditional Ḥalal Foods. For those feasts of 2018, they fed the Plaintiff non-traditional Ḥarām hot dogs that was made from meat not slaughtered In the Name of Allāh and not in accordance with Qur'ānic tenants. The denial of the Ṣalah, Khutbah, and Feast of the Id Ul Fitr and Id Ul Adha Celebrations

of 2018 placed a substantial burden upon the Plaintiff's religious exercise. Feeding the Plaintiff Plaintiff non-traditional Ḥarām hot dogs from meat that was not slaughtered In the Name of Allāh and not in accordance with Qur'ānic tenants also placed a substantial burden upon his religious exercise. 42 U.S.C. § 2000cc-1 (a)-(b); U.S. Const. Amend. 1; Appendix 1-17

4.) TDOC, Commissioner Parker, CCA, Rev. B. Darnell, Warden Washburn and Chaplain Shonebarger have all denied the Plaintiff a religious menu at T.T.C.C. during the Holy Month of Ramaḍān that feeds traditional Ḥalal foods that were eaten by Prophet Muḥammad

صلى الله عليه و السلم, his Companions, the 4 rightly Guided Khaliphs, or the 3rd Generation of Muslims that who were all upon Guidance from Allāh. They denied the Plaintff's requests for the Holy Month of Ramaḍān to be able to eat dates, drank whole milk, eat honey, Ḥalal meats [Lamb, Chicken, Beef, and Fish] with vegetables and natural fruits [not processed foods] both before and after he fasts' every day during the Holy Month of Ramaḍān of 2018 and 2019. They also denied the Plaintiff's request to be able to purchase Ḥalal meats every month for commissary, leaving the Plaintiff with the only option to purchase Ḥarām beaf and chicken products that were not slaughtered In the Name of Allāh and not in accordance with Qur'ānic tenants. U.S. Const. Amend. 1; 42 U.S.C. § 2000cc-1 (a)-(b); Appendix 1-17

Establishment Clause/Equal Protection Clause

5.) TDOC, Commissioner Parker and Rev. B. Darnell, C.C.A., Warden Russell Washburn and Chaplain Jon Shonebarger have all violated the Establishment Clause and Equal Protection Clause of the 1st and 14th Amendments by showing special treatments to Christian inmates by allowing Kiros and Men of Valor to be able to enter TDOC and Core Civic America facilities to donate outside foods, hygiene products, and have religious meals brought into the prisons for Christmas and Easter Celebrations for all inmates [despite their religious preferences], but deprive the Plaintiff of the ability to have traditional Ḥalal Foods, Islamic Prayer Oil and Ḥalal hygiene products donated to TDOC, and TDOC Contracted Facilities. This behavior demonstrates that Christianity is preferred over Islām and that participants of the Islāmic Faith have disadvantaged treatments. It also demonstrates that the Defendants have discriminatory intentions against the Islamic Faith by depriving them of traditional foods and religious items for their religious celebrations, while allowing Christians to receive traditional foods and religious items for their religious celebrations. Moreover, depriving the Plaintiff of the ability to have Ḥalal Foods donated to TDOC and TDOC Contracted CCA Prisons places a substantial burden on his religious exercise. 42 U.S.C. § 2000cc-1 (a)-(b); U.S. Const. Amend. 1 and 14; Appendix 1-17

<u>Establishment Clause</u>

6.) TDOC, C.C.A., Warden Russell Washburn, Rev. B. Darnell and Chaplain Jon Shonebarger have all violated the Establishment Clause of the 1st Amendment to the United States Constitution by allowing the Men of Valor to have a Christian based program pod at T.T.C.C., but denied the Plaintiff's request for a Unit for Muslims to be able to practice their religion with a program designed to better themselves with the assistance of outside Muslim sponsors. The Plaintiff submitted a program called Al Andalus to Chaplain Jon Shonebarger in 2018, and the Plaintiff has not received any response from the Rev. B. Darnell concerning the group accommodations request. Also concerning a violation of the Establishment Clause, the Plaintiff submitted a request to start a Qur'anic Arabic Studies Group in 2018 on the group accommodations request form, and Chaplain Jon Shonebarger has not provided any response from the Director of Religious Services, Rev. B. Darnell. Chaplain Shonebarger mentioned that he recommended that the class be denied by the religious activities committee despite the fact that there is a Hebrew/Greek Bible Study Group for Christians available at T.T.C.C. Clearly, this demonstrates that the Defendants show "special treatment" to Christian inmates, and disfavorable treatments to Muslim inmates concerning the same opportunities. U.S. Const. Amend. 1; Appendix #7

A.) C.C.A. And Russell Washburn have printed a memorandum unfairly banning the Qur'ān from entering Trousdale Turner Correctional Center [T.T.C.C.], but allowing the Bible to be ordered from Union Supply. There is no purpose for this memorandum other than to give more favorable treatments and to promote Christianity while showing disfavoring beliefs towards Islām, the religion of the Plaintiff.

<u>Free Exercise Clause/RLUIPA</u>

7.) TDOC, Commissioner Tony Parker, and Rev. B. Darnell, Core Civic America, Warden Russell Washburn and Chaplain Shonebarger all have forced the Plaintiff to purchase Islamic prayer oil from a Christian Vendor and a unislamic vendor. The Plaintiff's religious exercise of traditional Islamic Practices of purchasing Islamic Prayer Oil from an Islamic Vendor is being substantially burdened by the Defendants barring him from purchasing Islamic Prayer Oil from an Islamic Vendor, and purchasing Prayer Oil from Union Supply, a Christian Vendor, and from a unislamic vendor [Access]. U.S. Const. Amend. 1; 42 U.S.C. § 2000cc-1 (a)-(b); Appendix 1-10

<u>Free Exercise Clause/RLUIPA</u>

8.) TDOC, Commissioner Tony Parker, Rev. B. Darnell, C.C.A., Warden Russell Washburn, and Chaplain Jon Sonebarger have all placed a substantial burden upon the Plaintiff's religious

exercise by totally banning Islamic attire worn in Ṣalah designed to cover the arms and other body parts from materials that are in accordance with Islamic requirements for dress while in Ṣalah. This substantial burden extends to them denying the Plaintiff a Kifiya [Towel-like Head-dress] and Agal [Designed to hold it in place] which was also worn by Prophet Muḥammad

صلى الله عليه و السلم and is part of the Sunnah that the Plaintiff follows. U. S. Const. Amend. 1; 42 U.S.C. § 2000cc-1 (a)-(b) Appendix 1-17

## RLUIPA REVIEW

The loss of First Amendment Freedoms constitutes irreparable injury, even for minimal periods of time. Elrod V. Burns, 427 U.S. 347, 373 (1976); Wickersham V. City of Columbia Missouri, 371 F. Supp. 2d 1061, 1075 (W.D. Mo. 2005) ("In the context of First Amendment cases, Courts normally assume irreparable injury because 'the loss of First Amendment Freedoms, for even minimal periods of time unquestionably constitutes irreparable injury.") The Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA") prohibits prisons from placing a substantial burden on an inmate's religious exercise unless the prison officials demonstrate that the burden is:

        a.) "in furtherance of a compelling governmental interest,";

        b.) "is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C.§ 2000cc-1(a)(1)-(2)

A Plaintiff bears the initial burden of showing:

    a.) That he seeks to engage in an exercise of religion; and

    b.) That the challenged policy, custom, or practice substantially burdened that religious exercise.

    42 U.S.C. § 2000cc-2(b)


Once a Plaintiff meets his "[b]urden of showing" that the challenged policy, custom or practice "substantially burdened" his religious exercise, the burden shifts "to the" government "to show" that its policy, custom or practice "was in furtherance of a compelling governmental interest" and "was the least restrictive means of furthering that compelling governmental interest." Holt V. Hobbs, 135 S. Ct. 853, 863 (2015) (citing 42 U.S.C.§ 2000cc-1(a))


## RELIGIOUS EXERCISE

"[C]ongress defined 'religious exercise' capaciously to include 'any exercise of religion, whether or not compelled by, or central to, a system of religious belief." Holt, 135 S. Ct. 853 at 860 (citing 42 U.S.C.§ 2000cc-5(7)(A)); Haight V. Thompson, 763 F.3d 554, 555 (6th Cir. 2014) (Noting RLUIPA's broad definition of "religious exercise".) "So long as the practice is traceable to a sincerely held religious belief,,, it does not matter whether the inmate's preferred exercise is 'central' to his faith…

Once an inmate makes this showing, the prison policy survives only if it serves a compelling governmental interest in the least restrictive way." Haight, 763 F. 3d 554 at 558-560 (internal citations omitted); Holt, 135 S. Ct. 853 at 860 ("This Chapter shall be construed in favor of a broad protection of religious exercise, to the maximum extent permitted by the terms of this Chapter and the Constitution.") (Quoting 42 U.S.C. § 2000cc -3(g)) Under RLUIPA Court's require that prisons "must do more than assert a security concern" even though prisons officials are normally given "wide latitude within which to make appropriate legislation, they must do more than offer conclusory statements and post hoc rationalizations." Murphy V. Missouri Dept. of Corr., 372 F. 3d 979, 988-999 (8th Cir. 2004) The Congressional Sponsors of RLUIPA have stated "inadequately formulated prison regulations and policies grounded on mere speculation, exaggerated fears, or post-hoc rationalizations will not suffice to meet the act's requirements." 146 Cong. Rec. S7774-01 (July 27[th] 2000) (Noting The Senate Report 103-111 at *10 (1993)) For, "it is less known that prison officials sometimes impose frivolous or arbitrary rules. Whether from indifference, ignorance, bigotry, or lack of resources, some institutions restrict religious liberty in egregious and unnecessary ways. Id (146 Cong. Rec. S7774-01, at Need For Legislation)

Once a Plaintiff has established that the Government has substantially burdened his religious exercise, the Defendants must "[d]emonstrate a compelling" governmental "interest" and for them to "show that it has adopted the least restrictive means of achieving that interest". This is considered to be "the most demanding test known to constitutional law." City of Borne V Flores, 521 U.S. 507, 534 (1997); Holt, 135 S. Ct. 853 at 864 ("the least-restrictive-means standard is exceptionally demanding and it requires the government to 'show that it lacks other means of achieving its desired goal without imposing a substantial burden on the exercise of religion by the objecting party." (Citation omitted); Shaw V Hunt, 517 U.S. 899, 908 n.4 (1996) ("To be a compelling interest, the State must show that the alleged objective was the…'actual purpose' for the [government's action].") For if the government has "least restrictive means available" to achieve its compelling governmental interest, it must utilize those "least restrictive means" to avoid undue substantial burdens upon the religious exercise of inmates. U.S V Playboy Ent. Grp. Inc., 529 U.S. 803, 815 (2000) ("If less restrictive means is available for the government to achieve its goals, the government must use it.") Holt, 135 S. Ct. 853 at 864 (Quoting with approval Playboy Ent. Grp. Int. 539 U.S. at 815) No other alternative forms of regulation that would further the governmental interest must be shown by the Defendants, creating the exceptionally demanding standard as noted by the United States Supreme Court. Grace United Methodist Church V City of Cheyenne, 235 F. Supp. 2d 1186, 1196 (D.C. Wyo. 2002) ("even if the local government demonstrates a compelling state interest, the land use regulation must be the least-restrictive-means to further that

interest...the local government must show that there are no other alternative forms of regulation that would further the governmental interest.") (citation omitted); Holt, 135 S. Ct. 853 at 866 ("...when so many prisons offer an accommodation, a prison must, at a minimum, offer persuasive reasons why it believes that it must take a different course, and the Department failed to make that showing here.")

## Id Ul Fitr & Id Ul Adha Traditional Foods At Feasts

"Only two other Courts of Appeals have addressed the question whether denying access to 'traditional foods' for religious celebration imposes a substantial burden on religion. Both reach the same conclusion we do: the prison system is not entitled to summary judgment." Schlemm V Wall, 784 F. 3d 362, 365 (7th Cir. 2015) (Citing Haight V. Thompson, 763 F. 3d 554, at 564-567 and Abdulhaseeb V Calbone, 600 F. 3d 1301, 1319-1320 (10th Cir. 2010)); Pleasant-Bey V. TDOC, 6th Cir. No. 18-5424 (Apr. 4th 2019) (Reversing and remanding claim that Plaintiff was denied opportunity to purchase traditional Ḥalal Foods at the Id Ul Fitr Feast of 2014) "Eid Ul Fitr 'is one of two major religious observances in Islam.'" Shakur V Selsky, 391 F. 3d 106, 120 (2nd Cir. 2004) (Citation omitted); U.S. Const. Amend. 1 As a matter of law, the Plaintiff's religious exercise of having the Id Ul Fitr and Id Ul Adha Ṣalah, Khutbah, and Feasts of 2018, all of which are an "act of worship in Islām" are a matter of right to have, not of privilege granted by the Defendants that can be denied without legal repercussions. The Act of Worship of eating in the Name of Allāh of the traditional Ḥalal Foods during the Id Ul Fitr Feasts are clearly within the legal definition of "'religious exercise'" Congress "capaciously" included in RLUIPA under "'any exercise of religion, whether or not compelled by, or central to, a system of religious belief.'" Holt, 135 S. Ct. 853 at 860 (citing 42 U.S.C.§ 2000cc-5(7)(A)) Denial of such a right to the Id Ul Fitr Ṣalah, Khutbah, or Feast unquestionably places a substantial burden upon Plaintiff's religious exercise, thus violating his First Amendment rights to Free Exercise and his RLUIPA rights. U.S. Const. Amend. 1; 42 U.S.C. § 2000cc-1 (a)-(b) Appendix, Affidavit of Plaintiff; Affidavit of The Plaintiff is unquestionably entitled to injunctive relief on this issue, and summary judgment as a matter of law, not denied as a matter of privilege granted by Defendants. Id

<u>Conjugal Relations With Wife</u>

Conjugal relations are very sacred acts of worship in Islām. (Appendix 1-17) Prophet Muḥammad صلى الله عليه و السلم has said that marriage is "half" the Deen of a Muslim. Id He further has stated that there is no celibacy in Islām. The sacred acts of conjugal relations between a Muslim and his Wife is religious exercise that is "compelled by" and "central to" Islamic beliefs. <u>Holt</u>, 135 S. Ct. 853 at 860 (citing 42 U.S.C.§ 2000cc-5(7)(A) ("[C]ongress defined 'religious exercise' capaciously to include 'any exercise of religion, whether or not compelled by, or central to, a system of religious belief.'"); Appendix 1-17 Therefore, the State of Tennessee and the remaining Defendants totally prohibiting the Plaintiff from having conjugal relations with his wife, but allowing him to be married while incarcerated clearly places a substantial burden upon his religious exercise of having a marriage and the act of sexually intimate conjugal relations in violation of his First Amendment and RLUIPA rights. U.S. Const. Amend. 1; 42 U.S.C. § 2000cc-1 (a)-(b); Appendix 1-17 The Plaintiff has demonstrated that the Defendants have placed a substantial burden upon his religious exercise, and thus they have to explain that placing such a substantial burden upon his religious exercise is in furtherance of a compelling governmental interest, and that it is the least restrictive means of furthering that compelling governmental interest. 42 U.S.C. § 2000cc-1 (a)-(b) So far, the Defendants have not been able to explain why they deny the Plaintiff of this act of worship in his Deen while he is incarcerated.

<u>Khufain</u>

The Prophet Muḥammad صلى الله عليه و السلم wore Khufain during Ṣalah and when he wasn't in Ṣalah. Appendix, Affidavits 1-17 The way Khufain work are that the person who makes Ṣalah wipes his feet during Wuḍu [Ablution] and he puts on Khufain. He wears Khufain even when he breaks Wuḍu by using the bathroom or breaking wind. However, before every Ṣalah, Wuḍu must be performed again. However, when wearing Khufain, he only needs to wipe over his Khufain one time with water when making ablution as long as he has whipped his bare feet within 24 hours of putting on the Khufain. Thus, the Prophet صلى الله عليه و السلم wore Khufain in and out of Ṣalah. Clearly, Khufain are part of the Sunnah of Prophet Muḥammad صلى الله عليه و السلم, but the Defendants are stubbornly denying the Plaintiff of this religious exercise which is essential to Ṣalah, and they have not explained why they deny it. U.S. Const. Amend. 1; 42 U.S.C. § 2000cc-1 (a)-(b); Appendix 1-17

## Establishment Clause and Equal Protection Clause

TDOC, Commissioner Parker and Rev. B. Darnell, Warden Russell Washburn and Chaplain Jon Shonebarger have all violated the Establishment Clause and Equal Protection Clause of the 1st and 14th Amendments by showing special treatments to Christian inmates by allowing Kiros and Men of Valor to be able to enter TDOC and Core Civic America facilities to donate outside foods, hygiene products, and have religious meals brought into the prisons for Christmas and Easter Celebrations for all inmates [despite their religious preferences] every year, but deprive the Plaintiff of the ability to have traditional Ḥalal Foods, Islamic Prayer Oil and Ḥalal hygiene products donated to TDOC, and TDOC Contracted Facilities. (Appendix 1-17) This behavior demonstrates that Christianity is preferred over Islām and that participants of the Islāmic Faith have disadvantaged treatments. It also demonstrates that the Defendants have discriminatory intentions against the Islamic Faith by depriving them of traditional foods and religious items for their religious celebrations, while allowing Christians to receive traditional foods and religious items for their religious celebrations. Moreover, depriving the Plaintiff of the ability to have Ḥalal Foods donated to TDOC and TDOC Contracted CCA Prisons places a substantial burden on his religious exercise.

42 U.S.C. § 2000cc-1 (a)-(b); U.S. Const. Amend. 1 and 17; Appendix 1-10; Cutter V. Wilkinson, 554 U.S. 709, 724-725 (2005) (Singling out a certain religion for "special treatment" violates the Establishment Clause of the First Amendment to the United States Constitution.); Perez V Frank, 433 F. Supp. 2d 955, 996 (W.D. Wis. 2006) ("To the extent petitioner contends that the religious traditions of other inmates are being accommodated while Islamic traditions are not…states a claim under the Establishment Clause."); U.S. Const. Amend. 1; Church of Lukumi Babalu Aye, Inc. V. Hialeah, 508 U.S. 520, 532 (1993) (A law may not discriminate against "some or all religious beliefs."); Davis V Prison Health Services, 679 F. 3d 433, 438 (6th Cir. 2012) ("The Equal Protection Clause of the Fourteenth Amendment protects against invidious discrimination among similarly situated individuals or implicating fundamental rights."); Lindell V. Casperson, 360 F. Supp. 2d 932, 958 (W.D. Wis. 2005) (Holding that "the denial of a privilege to adherents of one religion while granting it to others is discrimination on the basis of religion in violation of the Equal Protection Clause of the Constitution."

## Prayer Oil From Islamic Vendors

TDOC, Commissioner Tony Parker, and Rev. B. Darnell, Core Civic America, Warden Russell Washburn and Chaplain Shonebarger all have forced the Plaintiff to purchase Islamic prayer oil from a Christian Vendor and a unislamic vendor. The Plaintiff's religious exercise of traditional Islamic Practices of purchasing Islamic Prayer Oil from an Islamic Vendor is being substantially burdened by the Defendants barring him from purchasing Islamic Prayer Oil from an Islamic Vendor, and purchasing Prayer Oil from Union Supply, a Christian Vendor, and from a unislamic vendor [Access]. U.S. Const. Amend. 1; 42 U.S.C. § 2000cc-1 (a)-(b); Appendix 1-17 The Defendants have not given any compelling governmental interest for why they place such substantial burdens upon Plaintiff's religious exercise. In this case, the least restrictive means of furthering any compelling governmental interest would be to allow the Plaintiff to purchase Islamic Prayer Oil from Islamic Vendors.

## Relief

The Plaintiff requests for the following relief to be given in this cause:

1.) That a Trial be held in this cause on every claim herein, even if he be released from prison.

2.) That the Defendants be required to change the policies and procedures that substantially burden his religious exercise to policies and procedures that do not substantially burden his religious exercise if they cannot provide the least restrictive means of furthering any compelling governmental interest for such substantial burdens they place upon Plaintiff's religious exercise.

3.) That this Court enter an Emergency Preliminary Injunction Order as soon as possible in light of the long history of the Defendants violating Plaintiff's 1st Amendment and RLUIPA rights. Pleasant-Bey V. TDOC, 6th Cir. No. 18-5424 (Apr. 4th 2019) (Reversing and remanding claims regarding Plaintiff's strict Ḥalal Food diet, being deprived of purchasing traditional Ḥalal Food for the Id Ul Fitr Feast of 2014, and Establishment Clause Claim regarding special treatment towards the Kosher Menu and disparity of treatment towards the Ḥalal Menu) The Order should mandate that the Defendants refrain from placing all of the above substantial burdens upon Plaintiff's religious exercise as soon as possible if the Defendants fail to provide an answer to the complaint that provides a compelling governmental interest for imposing those substantial burdens with the least restrictive mean of furthering such a compelling governmental interest.

4.) That the Plaintiff be given a sentence reduction for the ongoing violation of his Constitutional and RLUIPA rights in this cause.

5.) After the trial in this matter, that each Defendant pay the Plaintiff 350,000.00 for violation of his First Amendment and 14th Amendment rights, even if their bank accounts, check or other payments have to be garnished for 40 years in a structured manner to complete the payments.


WHEREFORE, THE PREMISES IS CONSIDERED, the Plaintiff thus requests for this Honorable Court to Serve the summons on the Defendants at the addresses below and require that they file an answer immediately after receiving it in accordance with 42 U.S.C. § 2000cc-1 (a)-(b) by providing a written answer explaining the governmental interest for imposing those substantial burdens upon Plaintiff's religious exercise and the least restrictive means of furthering that compelling governmental interest, and grant the relief in this cause as soon as possible.


Respectfully Submitted,

Plaintiff/Pro Se

Boaz Pleasant-Bey # 473110

T.T.C.C.

410 Macon Way

Hartsville, Tenn. 37074


Certificate of Service


I, Boaz Pleasant-Bey, certify that a true and exact copy of the foregoing has been mailed to the Clerk of the United States District Court for the Middle District of Tennessee at 801 Broadway Room 800, U.S. Courthouse; Nashville, Tennessee 37203 on this 30th day of May 2019

## Appendix

Appendix A, Declaration of Williams

Appendix B, Declarations of Pleasant-Bey (Rejected Grievances Attached)

Appendix 1, Declaration of Pegues

Appendix 2, Declaration of Merritt

Appendix 3, Declaration of Hillard

Appendix 4, Declaration of Jones

Appendix 5, Declaration of Goldthreate

Appendix 6, Declaration of Williams

Appendix 7, Declaration of Pleasant-Bey

Appendix 8, Declaration of Demonbreun

Appendix 9, Declaration of Bryant

Appendix 10, Declaration of Shade

Appendix 11, Declaration of Griffin

Appendix 12, Declaration of Jenkin

Appendix 13 Affidavit of LittleJohn

Appendix 14 Affidavit of Muhammad

Appendix 15 Affidavits of ~~Brown~~ Moore

Appendix 16 Affidavit of Davis

Appendix 17 Affidavit of Simmons

Appendix 18.) Affidavit of Wellons Jr.

# **Affidavit**

"I <u>Aaron Williams</u>, affirm and verify under penalty of perjury pursuant to 28 U.S.C.A. § 1746 under the laws of the United States of America that the foregoing is true and correct:

1. I have been housed at Trousdale Turner Correctional Center (T.T.C.C.) for at least 2 years.
2. I have filed several grievances with the Grievance Board at Trousdale Turner Correctional Center and I have not received responses after the 2nd Second level Appellant stage or receive a Institutional Grievance Number, so as to track and receive copies needed for further proceeasing.
3. Other Grievances I have filed I never received any response, but official here at Trousdale Turner Correctional Center have gave me verbal responses to issues without providing written documentation on trying to correct different issue that were at hand at the time.
4. I have never had one grievance hearing here which is required by the Tennesse Department of Corrections Policy.
5. T.T.C.C. is suverely understaffed. At times, the Institution does not have enough Officers to make sure the Inmate population can attend Work in the Housing Units as well as Educational & Recreational Programs. Due to the Institution being understaffed on a regular basis there is <u>no routine</u> work or recreational schedules that are constant to help with each Inmates rehabilitation while in incarceration.
6. There is about 2,500 inmates here at T.T.C.C. and the Grievance Board Chairperson usually rejects the Grievances filed, takes an extremly long amount of time to respond which can be up to few Months to a Year, or not at all.

Executed on  May / 22 /2019 .

_____ ".
Signature

<u>Affidavit</u>

I *Boaz Pleasant-Bey*                    , affirm and declare under the penalty of

perjury pursuant to 28 U.S.C. § 1746 under the laws of the United States of America that the following is

true and correct:

1.)     I have been housed at Trousdale Turner Correctional Center [T.T.C.C.] for at least 1 year.

2.)     I have filed several grievances with the Grievance Board at Trousdale Turner

Correctional Center and I have not received any responses.

3.)     Other grievances I have filed have taken 8-10 months for a response, and according to the

Grievance policy, it is supposed to be a 7-10 day response.

4.)     The grievances that I have had decided have been held without a proper grievance

hearing as required by the Tennessee Department of Corrections Policy.

5.)     T.T.C.C. is highly understaffed. Sometimes, the facility does not have enough officers

from being able to work in the Housing Units. Often, the prison has to become lockdown due to

the prison being understaffed. There are 2,500 inmates here at T.T.C.C, and the Grievance Board

usually rejects the grievances filed, takes an extremely long time [of months or a year] to

respond, or there is no response at all. *Several grievances filed by me are rejected*
*for no reason by TDoc Policy. See Attached.*

*#473110*    Declarant/Affiant

Date: *5/30/19*

TENNESSEE DEPARTMENT OF CORRECTION

**INAPPROPRIATE GRIEVANCE NOTIFICATION**

TO: _Boaz Pleasant-Bey_ _473110_ _EA-205_
  INMATE NAME (Printed)          TDOC NUMBER          HOUSING UNIT

FROM: _Sgt. Cockrell_ , Grievance Chairperson

DATE: _4-25-19_

SUBJECT: _RE I._

---

**THIS GRIEVANCE IS INAPPROPRIATE TO THE GRIEVANCE PROCEDURE.** Your Grievance is being returned to you due to the following reason(s):

1. Disciplinary matters are inappropriate to the Grievance Procedure. [Policy #501.01 VI.(H)(1)]
2. Appealing decisions or actions of any agency outside the Tennessee Department of Correction (TDOC) is inappropriate to Grievance Procedure. [Policy #501.01 VI.(H)(2)]
3. Classification matters/institutional placement are inappropriate to Grievance Procedure. [Policy #501.01 VI.(H)(3)]
4. Appealing or seeking review of sentence credits. [Policy #501.01 VI.(H)(4)]
5. Grievance Procedure cannot award monetary compensation for injuries or property loss. [Policy #501.01 VI.(H)(5)]
6. Addressing questions regarding sentence structures. [Policy #501.01 VI.(H)(6)]
7. Visitor's behavior which results in disciplinary action. [Policy #501.01 VI.(H)(7)]
8. A diagnosis by medical professionals and medical co-pay is inappropriate. [Policy #501.01 VI.(H)(8)]
9. Security Threat Group (STG) Placement. [Policy #501.01 VI.(H)(9)]
10. Mail rejection. [Policy #501.01 VI.(H)(10)]
11. You have already filed a grievance on this issue. Inmates shall not be permitted to submit more than one grievance arising out of the same or similar incident. [Policy #501.01 VI.(I)(1)]
12. Abuse of Grievance Procedure. You can only have one grievance pending at Level 1 for review. [Policy #501.01 VI.(I)(2)]
13. Profanity, insults, and racial slurs, unless an alleged direct quote of another party, shall not be permitted. Threats may result in disciplinary action. [Policy #501.01 VI.(I)(3)]
14. Grievances must be filed within seven calendar days of the occurrence giving rise to the grievance. A complaint shall not address multiple issues. [Policy #501.01 VI.(C)(1)]

---

**THIS GRIEVANCE IS UNABLE TO BE PROCESSED DUE TO YOU NOT FOLLOWING POLICY.** Grievance forms not properly completed or contain insufficient information for processing shall be returned to the Inmate with instructions as to proper completion. [Policy #501.01 VI.(C)(1)] Your grievance is being returned to you due to the following reason(s):

1. No specific details , i.e. dates, times, names of persons involved as mandated in *Inmate Grievance Handbook*, Page 7, First Level of Review.
2. You did not: a) Sign and date, and/or b) state your "Requested Solution"
3. Grievance shall be submitted on Form CR-1394 pages 1 and 2. All copies must be legible and in tact. [Policy #501.01 VI.(C)(1)]
4. _____
   _____
   _____
   _____

---

*Reminder:* *You have **SEVEN CALENDAR DAYS FROM THE DATE THE INCIDENT OCCURRED** to submit a grievance. If you are still interested in filing this grievance, please make the necessary corrections and return to Grievance Office for further processing immediately. If you would like to appeal this response, sign the bottom of your grievance, check "yes" then date it and place (with this coversheet) back in the grievance box. If you have any questions regarding this memo, please have your Unit Officer contact me at Ext. _____ to schedule an appointment. TDOC Policy and Procedure are available in the library.*

_____
Grievance Chairperson

BoAZ Pleasant-Bey #473110
F.T.C.C.
140 Macon Way
Hartsville, Tenn, 37074



United States District Court Clerk
  Middle District of Tenn.
United States Courthouse
801 Broadway Street, Room 800
Nashville, Tenn. 37203

JUN 0 4 2019

THE DEPARTMENT OF CORRECTION
TTCC HAS NEITHER INSPECTED
NOR CENSORED AND IS NOT
RESPONSIBLE FOR THE CONTENTS