# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| **BOAZ PLEASANT-BEY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 3:19-cv-00486** |
| | ) | **Judge Trauger** |
| **STATE OF TENNESSEE, et al.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM

Boaz Pleasant-Bey, an inmate at Trousdale Turner Correctional Center in Hartsville, Tennessee, filed this *pro se* civil rights action under 42 U.S.C. § 1983 and the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc-1(a). The complaint names seven defendants: the State of Tennessee, CoreCivic America, Warden Russell Washburn, Chaplain Jon Shonebarger, the Tennessee Department of Corrections ("TDOC"), Commissioner Tony Parker, and Reverend B. Darnell. (Doc. No. 1 at 2.) The plaintiff also filed a motion to proceed *in forma pauperis* (Doc. No. 2), three motions to amend (Doc. Nos. 4, 7, 8), and a motion to dismiss a claim asserted in the first motion to amend (Doc. No. 6). Finally, the plaintiff filed a motion to rename the caption of the case (Doc. No. 9) and a motion for a preliminary injunction (Doc. No. 10). This action is before the court for an initial screening, as required by the Prison Litigation Reform Act ("PLRA").

## I.      Application to Proceed as a Pauper

The court may authorize a prisoner to file a civil suit without prepaying the filing fee. 28 U.S.C. § 1915(a). It appears from the plaintiff's *in forma pauperis* application that he cannot pay

the full filing fee in advance. Accordingly, the application (Doc. No. 2) will be granted and the $350.00 filing fee will be assessed as directed in the accompanying order. 28 U.S.C. § 1915(b)(1).

## II.    Miscellaneous Motions

The plaintiff's three motions to amend (Doc. Nos. 4, 7, 8) will be granted, and the court will consider these amendments alongside the plaintiff's original complaint for the purpose of conducting this initial review. The court notes, however, that the plaintiff filed a motion to dismiss one of the claims asserted in the first motion to amend. (Doc. No. 6.) Specifically, in the first motion to amend, the plaintiff sought to add a claim that Trousdale Turner's alleged understaffing violates the Eighth Amendment because it jeopardizes the safety of inmates and staff members. (Doc. No. 4 at 3–4.) The plaintiff's motion to dismiss this claim (Doc. No. 6) will be granted, and the court will not consider it.

The first motion to amend essentially adds the following six defendants to a claim already asserted in the original complaint: Ed Welch, the TDOC Assistant Commissioner of Rehabilitations Services; Bobby Straughter, the TDOC Assistant Commissioner of Operational Support; Brandon Maloney, the TDOC Classification Coordinator; Chris Brun, the TDOC Liaison for Trousdale Turner; Jason Medlin; and Chaplain Tom Simic. (Doc. No. 4 at 2.) The second motion to amend asserts a claim not contained in the original complaint, against two original defendants and the Sheriff of Trousdale County. (Doc. No. 7 at 1.) And the third motion to amend adds an original defendant to the claim asserted in the second motion to amend. (Doc. No. 8 at 1.) The motion for a preliminary injunction, meanwhile, requests immediate injunctive relief on the claim asserted in the second and third motion to amend. (Doc. No. 10 at 3.) This claim will be discussed below. *See infra* Section III.C.3.

Finally, the plaintiff's motion to rename the caption of the case (Doc. No. 9) will be denied in part and granted in part. The plaintiff states that he "finds this case to be a continuation of [] previous litigation" and that his preferred caption "is more suitable for this case." (*Id.* at 1.) He may not, however, choose the caption of his case. Nonetheless, the first defendant in this case is currently, and incorrectly, listed on the docket as "State of Tennessee, Secretary of State." Thus, the plaintiff's motion to rename the caption of the case will be granted to the extent that the Clerk will be directed to update the first listed defendant to "State of Tennessee."

## III.    Initial Review

Under the PLRA, the court must review and dismiss the complaint if it is frivolous or malicious, fails to state a claim, or seeks monetary relief from an immune defendant. 28 U.S.C. § 1915A. The court must construe a *pro se* complaint liberally, *United States v. Smotherman*, 838 F.3d 736, 739 (6th Cir. 2016) (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)), and accept the factual allegations as true unless they are entirely without credibility. *Thomas v. Eby*, 481 F.3d 434, 437 (6th Cir. 2007) (citing *Denton v. Hernandez*, 504 U.S. 25, 33 (1992)).

### A.    Factual Allegations

The plaintiff, who is Muslim, alleges that he has been unable to exercise his religious beliefs at Trousdale Turner, and that Christian inmates receive more favorable treatment than Muslim inmates. He also alleges that he has not received work reduction credits to which he is entitled. The plaintiff requests injunctive relief, monetary damages, a sentence reduction (Doc. No. 1 at 14–15; Doc. No. 4 at 4), and work reduction credits (Doc. No. 7 at 3; Doc. No. 10 at 3).

#### 1.    Conjugal Relations

The plaintiff believes that "marriage is half of his Deen [Religion, Way of Life]," and that "having conjugal relations with his wife" is an act of worship (Doc. No. 1 at 3) central to his

religious beliefs (*id.* at 12). According to the plaintiff, he has been unable to have conjugal relations with his wife while incarcerated in facilities operated by or contracting with the TDOC. (*Id.* at 3, 5.) The plaintiff also states that he has been married for over twelve years, and his wife told him she would "come where ever [he is] in the world to be with [him] because she loves [him] just that much." (Doc. No. 1-1 at 2.) Because they cannot have conjugal relations, the plaintiff is "unable to sustain [his] marriage in Islam as it is required." (*Id.*)

### 2. Access to Religious Items

The plaintiff believes that he must follow Prophet Muhammad's tradition of wearing a type of socks called Khufain in and out of Salah, or prayer. (Doc. No. 1 at 3, 5, 12.) The plaintiff alleges that he is not allowed to purchase Khufain at Trousdale Turner, despite submitting "several requests." (*Id.* at 5.) The defendants[1] also allegedly ban Islamic attire "designed to cover the arms and other body parts" during prayer. (*Id.* at 7–8.) This includes a "Towel-like Headdress," called a "Kifiya," as well as an item designed to hold the Kifiya, called an "Agal." (*Id.* at 8.) And the plaintiff believes that he is required to purchase Islamic prayer oil from an Islamic vendor, but the defendants allegedly force him to buy Islamic prayer oil from Union Supply, a Christian vendor, or Access, an "unislamic" vendor. (*Id.* at 7, 14.)

### 3. Religious Diet

The plaintiff believes that he must fast during the Holy Month of Ramadan and eat only traditional Halal foods before and after fasting every day. (*Id.* at 3.) At the end of the month, the plaintiff must eat traditional Halal foods during a feast held for one to three days, called "Id Ul

---

[1] The plaintiff repeatedly refers to a "CCA" in the original complaint. The court infers that these references apply to the entity identified in the list of defendants as "Core Civic America," as Corrections Corporation of America (CCA) was the predecessor to Core Civic America.

Fitr." (*Id.*) He must also eat traditional Halal foods during another feast called "Id Ul Adha." (*Id.*) These two feasts traditionally include a sermon before the food is served. (*Id.*)

Despite these requirements, the plaintiff alleges, the defendants have interfered with the plaintiff's ability to consume traditional Halal foods. (*Id.* at 5.) According to the plaintiff, he was not allowed to purchase traditional Halal foods for the feasts of Id Ul Fitr and Id Ul Adha in 2018 (*id.*) and 2019 (Doc. No. 4 at 1, 3). He also was not allowed to have traditional Halal foods donated to Trousdale Turner for the feasts in 2018. (Doc. No. 1 at 5.) Indeed, the plaintiff alleges that the defendants cancelled the feasts and accompanying sermons in 2018. (*Id.*; Doc. No. 1-1 at 1.)

The plaintiff alleges that, during Ramadan, Prophet Muhammad and his companions consumed unprocessed foods, including dates, whole milk, honey, vegetables, fruits, and Halal meats like lamb, chicken, beef, and fish. (Doc. No. 1 at 3–4, 6.) The plaintiff alleges that he was not allowed to eat these "traditional Halal foods" before and after fasting every day during Ramadan in 2018 and 2019. (*Id.*) He also alleges that his request to purchase "Halal meats every month" was denied, which forced the plaintiff to purchase beef and chicken products that were Haram, or forbidden. (*Id.* at 6.)

In the plaintiff's attached declaration, he states that he asked Chaplain Shonebarger for traditional Halal food for the feasts in 2018 and 2019. (Doc. No. 1-1 ¶ 3.) Shonebarger responded: "I spoke to the legal counsel for Core Civic America, and they said absent a Court Order demanding that we have to give you traditional Halal Foods at the Id Ul Fitr and Id Ul Adha Feast, we're not going to give it to you because it's not important to the Courts." (*Id.*) The plaintiff also alleges that he saw Chaplain Simic at the Id feasts. (Doc. No. 4 at 2.) The plaintiff allegedly filed timely grievances regarding the 2019 feasts, but did not receive any response. (*Id.* at 1.)

### 4. Differential Treatment

The plaintiff alleges that Muslim organizations are not allowed to donate items to TDOC or CoreCivic facilities, including traditional Halal foods for religious celebrations, Islamic prayer oil, and Halal hygiene products. (Doc. No. 1 at 5–6, 13.) On the other hand, the plaintiff alleges, Christian organizations called Kiros and Men of Valor are allowed to enter TDOC and CoreCivic facilities to donate outside foods and hygiene products and bring religious meals for all inmates at Christmas and Easter, regardless of the inmates' religious beliefs. (*Id.* at 6, 13.)

According to the plaintiff, the defendants allow Men of Valor to have a "Christian based program pod" at Trousdale Turner but denied the plaintiff's request for a "Unit for Muslims to be able to practice their religion with a program designed to better themselves with the assistance of outside Muslim sponsors." (*Id.* at 7.) Specifically, the plaintiff alleges that he "submitted a program called Al Andalus" to Chaplain Shonebarger in 2018 (*id.*), designed to help Muslim inmates "rehabilitate themselves using Islamic teaching and Islamic college correspondence courses" (Doc. No. 1-1 at 3). Ten months passed without the plaintiff receiving a response. (*Id.*) The plaintiff asked Shonebarger about the program in January 2019, and Shonebarger said that "he did not receive any emails concerning it, but it was probably denied." (*Id.*)

There is also, allegedly, a "Hebrew/Greek Bible Study Group" for Christians at Trousdale Turner. (Doc. No. 1 at 7.) And the plaintiff also requested to start a "Qur'anic Arabic Studies Group" in 2018. (*Id.*) But Chaplain Shonebarger did not provide a response from Reverend Darnell, the Director of Religious Services. (*Id.*) Instead, Shonebarger "mentioned that he recommended that the class be denied by the religious activities committee." (*Id.*) Shonebarger also recommended that the plaintiff "bunch the Arabic Class in with the Taleem Service," but that class allegedly addresses "other aspects" of Islam than the plaintiff was seeking to address. (Doc. No. 1-1 at 3.) At some point, Chaplain Simic told the plaintiff that the class was denied. (*Id.*)

The plaintiff also alleges that CoreCivic and Warden Washburn ban Qur'ans from entering Trousdale Turner while allowing inmates to order Bibles from Union Supply. (*Id.*)

### 5. Attachments to the Original Complaint

The plaintiff attached two sets of declarations to the complaint. The first is a set of two declarations from himself and one other inmate, both reflecting that Trousdale Turner routinely mishandles grievances, in part, because it is understaffed. (Doc. No. 1 at 17–18.)

The second is a set of declarations from himself and sixteen other inmates regarding the allegations in the original complaint. The plaintiff's declaration basically re-states the factual allegations with some personal details. (Doc. No. 1-1.) The sixteen other inmates' declarations are substantively identical to each other. They all have seven paragraphs, six of which are essentially copied from the plaintiff's declaration. (*Compare* Doc. No. 1-1 ¶¶ 1 to 5, 7 (the plaintiff's declaration), *with* Doc. No. 1-2 ¶¶ 1 to 6 (inmate Tavahdric Jamahd Bryant's declaration).) And the seventh paragraph states that Trousdale Turner's alleged ban on Islamic attire substantially burdens the exercise of these inmates' religious beliefs. (*See, e.g.*, *id.* ¶ 7.)

### 6. Work Reduction Credits

In the second motion to amend, the plaintiff alleges that he was incarcerated at Hardeman County Correctional Center "between 2011-2012," Whiteville Correctional Center "from 2012-2013," and Trousdale Turner Correctional Center beginning in April 2018. (Doc. No. 7 at 2; Doc. No. 11 at 1 (affidavit accompanying motion for preliminary injunction).) These three facilities are managed by CoreCivic. (*Id.*) Under Tennessee law, the plaintiff alleges, he must receive two days of credit on his sentence for every one day he worked at these three facilities. (*Id.*) But according to the plaintiff, he has not received the work reduction credits to which he is entitled. (*Id.*)

### B.     Standard of Review

To determine whether a prisoner's complaint "fails to state a claim on which relief may be granted" under the PLRA's screening requirements, the court applies the same standard as under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). The court therefore accepts "all well-pleaded allegations in the complaint as true, [and] 'consider[s] the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief.'" *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009)). An assumption of truth does not, however, extend to allegations that consist of legal conclusions or "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). A *pro se* pleading must be liberally construed and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson*, 551 U.S. at 94 (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

### C.     Discussion

The plaintiff invokes both Section 1983 and the Religious Land Use and Institutionalized Persons Act, or RLUIPA. RLUIPA "protects institutionalized persons who are unable freely to attend to their religious needs and are therefore dependent on the government's permission and accommodation for exercise of their religion." *Cutter v. Wilkinson*, 544 U.S. 709, 721 (2005) (footnote omitted). Meanwhile, Section 1983 "provides recovery for constitutional deprivations incurred under the color of state law." *Prater v. City of Burnside, Ky.*, 289 F.3d 417, 424 (6th Cir. 2002). Here, the plaintiff primarily asserts that the defendants deprived him of rights under the following constitutional provisions: the Free Exercise Clause of the First Amendment; the Establishment Clause of the First Amendment; and the Equal Protection Clause of the Fourteenth Amendment.

The plaintiff's allegations as to his claims under the Free Exercise Clause and RLUIPA overlap (Doc. No. 1 at 3, 5, 7–8, 14; Doc. No. 4 at 2–3), as do some of the plaintiff's allegations as to his claims under the Establishment Clause and the Equal Protection Clause (Doc. No. 1 at 6–7, 13). The court will therefore analyze these claims together.

### 1. Free-Exercise Clause / RLUIPA

"The Free Exercise Clause of the First Amendment to the United States Constitution provides that 'Congress shall make no law . . . prohibiting the free exercise [of religion].'" *Maye v. Klee*, 915 F.3d 1076, 1083 (6th Cir. 2019) (quoting U.S. Const. amend. I). "In any free exercise claim, the first question is whether 'the belief or practice asserted is religious in the [plaintiff's] own scheme of things' and is 'sincerely held.'" *Id.* (quoting *Kent v. Johnson*, 821 F.2d 1220, 1224 (6th Cir. 1987)). If the plaintiff makes this threshold showing, then the court "appl[ies] the test set out in *Turner v. Safley*, 482 U.S. 78, 89 (1987), to determine whether [the] restriction is invalid." *Arauz v. Bell*, 307 F. App'x 923, 928 (6th Cir. 2009). "'[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests.'" *Maye*, 915 F.3d at 1083 (quoting *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987)). The Supreme Court has held that "neutral, generally applicable laws that incidentally burden the exercise of religion usually do not violate the Free Exercise Clause of the First Amendment." *Holt v. Hobbs*, 574 U.S. 352, 859 (2015) (citing *Emp't Div., Dep't of Human Res. of Ore. v. Smith*, 494 U.S. 872, 878–882 (1990)).

RLUIPA provides stronger protections for prisoners than the First Amendment. *Colvin v. Caruso*, 605 F.3d 282, 298 (6th Cir. 2010) (citing *Lovelace v. Lee*, 472 F.3d 174, 199–200 (4th Cir. 2006)). To state a claim under RLUIPA, a prisoner must (1) "demonstrate that he seeks to exercise religion out of a 'sincerely held religious belief'" and (2) "show that the government

substantially burdened that religious exercise." *Cavin v. Mich. Dep't of Corrs.*, 927 F.3d 455, 458 (6th Cir. 2019) (quoting *Holt*, 574 U.S. at 862). If the plaintiff satisfies these elements, then the government must show "that the burden furthers 'a compelling government interest' and 'is the least restrictive means' of doing so." *Id.* (quoting 42 U.S.C. § 2000cc-1(a)). This is a higher standard for the government to meet than the *Turner* standard for First Amendment claims brought under Section 1983. *See Colvin*, 605 F.3d at 296 (citing *Turner*, 482 U.S. at 89); *see also Cavin*, 927 F.3d at 458 (describing the government's RLUIPA burden as "daunting").

Importantly, under the standards of both the Free Exercise Clause and RLUIPA, the court may not "inquire into the centrality to a faith of certain religious practices—dignifying some, disapproving others." *Haight v. Thompson*, 763 F.3d 554, 566 (6th Cir. 2014). And under both standards, protection of a prisoner's religious practice "is 'not limited to beliefs which are shared by all of the members of a religious sect.'" *Holt*, 574 U.S. at 862–63 (quoting *Thomas v. Review Bd. of Ind. Emp't Sec. Div.*, 450 U.S. 707, 715–76 (1981)).

Here, the plaintiff asserts that the government substantially burdened six of his religious beliefs. For the purpose of initial review, the court assumes that these beliefs are sincerely held and religious in nature. The court will apply the standards for claims under the Free-Exercise Clause and RLUIPA to each belief in turn.

### a.     Conjugal Visits

First, the plaintiff alleges that his sincere religious beliefs require him to have "sexually intimate conjugal relations" with his wife while married, but that he has not been allowed to do so. (Doc. No. 1 at 12.) This is not the sort of regulation that generally violates the Free Exercise Clause, as the plaintiff does not allege that it is anything other than a "neutral, generally applicable [regulation] that incidentally burden[s his] exercise of religion." *Holt*, 574 U.S. at 859. Moreover,

the Supreme Court has held that "a ban on contact visits" bears "a valid, rational connection" to the legitimate penological interest of "internal security of a detention facility." *Block v. Rutherford*, 468 U.S. 576, 586 (1984). Indeed, the Supreme Court found this conclusion "too obvious to warrant extended discussion." *Id.* Accordingly, these allegations fail to state a claim under the Free Exercise Clause.

The Supreme Court has not, however, considered conjugal visits in the context of RLUIPA's heightened protections for religious liberties. At least one California district court—operating in a different circuit and considering a different state's regulatory scheme—routinely dismisses prisoners' RLUIPA claims related to conjugal visits on initial review. *See Collier v. Kernan*, 1:16-cv-01616, 2017 WL 445715, at *4 (E.D. Cal. Feb. 1, 2017) (collecting cases from the Eastern District of California). But the plaintiff may face a regulatory scheme that differs from California's in material ways, and the standard that the government must meet under RLUIPA if it substantially burdened the plaintiff's sincere religious belief is, after all, "daunting." *Cavin*, 927 F.3d at 458. Thus, taking the plaintiff's allegations as true and liberally construing them in his favor, the court will not dismiss this RLUIPA claim at this early stage in the proceedings.

As to the appropriate defendants for this claim, RLUIPA applies to "government[s]," and the statute "defines 'government' as including States and their agencies and departments, as well as persons acting under color of State law." *Cardinal v. Metrish*, 564 F.3d 794, 798 (6th Cir. 2009) (citing 42 U.S.C. § 2000cc-5(4)(A)). The plaintiff brings this claim against the seven original defendants—the State of Tennessee, the TDOC, Commissioner Parker, Reverend Darnell, CoreCivic, Warden Washburn, and Chaplain Shonebarger. (Doc. No. 1 at 5.) All of these defendants arguably fall into RLUIPA's definition of "government," including CoreCivic, which acts "under color of State law" because it "perform[s] the 'traditional state function' of operating

a prison." *See Street v. Corrs. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996) (finding CCA to be a state actor under Section 1983). At this juncture, the court cannot determine what role the state, state agency, and state actors played in authorizing or implementing the alleged regulation at the center of this claim. Accordingly, although the plaintiff's assertion of liability is somewhat conclusory, and some of these defendants may ultimately be redundant, the court will allow the plaintiff to proceed with this RLUIPA claim against the seven original defendants. The appropriate defendants for this claim may be determined in due time on a more developed record.

The court notes, however, that money damages are not an available remedy under RLUIPA. *Haight*, 763 F.3d at 568–70 (collecting circuit court cases for the proposition that "RLUIPA does not permit money damages against state prison officials, even when the lawsuit targets the defendants in their individual capacities"). Thus, the plaintiff is not eligible to recover money damages for this claim, or any other RLUIPA claim asserted in the complaint.

### b. Khufain

Second, the plaintiff alleges that he has a sincere religious belief in wearing certain socks, called Khufain, in and out of Salah, or prayer. (Doc. No. 1 at 3, 5, 12.) He alleges that Khufain enhance the "convenience" of Salah (*id.* at 5), explaining as follows:

> The way Khufain work are that the person who makes Salah wipes his feet during Wudu [Ablution] and he puts on Khufain. He wears Khufain even when he breaks Wudu by using the bathroom or breaking wind. However, before every Salah, Wudu must be performed again. However, when wearing Khufain, he only needs to wipe over his Khufain one time with water when making ablution as long as he has w[iped] his bare feet within 24 hours of putting on the Khufain.

(*Id.* at 12.) The plaintiff alleges that he has not been allowed to purchase Khufain despite submitting "several requests." (*Id.* at 5.) The court concludes that the plaintiff has stated both a Free-Exercise claim and a RLUIPA claim on this basis.

The court applies the *Turner* factors to the plaintiff's Free-Exercise claim: "(1) whether the prisoner possesses alternative avenues for exercising his religion; (2) whether accommodating the prisoner would affect 'guards and other inmates' or 'the allocation of prison resources generally'; and (3) whether 'obvious, easy alternatives' exist that suggest 'the regulation is not reasonable.'" *Cavin*, 927 F.3d at 461 (quoting *Turner*, 482 U.S. at 89–91). It appears that this first factor, at least, may not be in the plaintiff's favor. That is, it may be relevant to the plaintiff's Free-Exercise claim that his lack of access to Khufain does not preclude him from performing Salah, but rather makes it less convenient. Nonetheless, the court will not dismiss the plaintiff's Free-Exercise claim on this basis at this early stage in the proceedings. *See Arauz*, 307 F. App'x at 928 (noting that courts reviewing a prisoner's complaint before "any responsive pleadings" are filed may not have the information necessary to apply the *Turner* standard to prison regulations).

Additionally, the fact that the plaintiff may be able to practice Salah without Khufain "does not play into a RLUIPA claim." *See Cavin*, 927 F.3d at 461 (citing *Holt*, 574 U.S. at 862) (noting that a prisoner's "alternative means of practicing his religion" may "bear[] some weight in the First Amendment context"). Instead, "RLUIPA's 'substantial burden' inquiry asks whether the government has substantially burdened religious exercise . . . , not whether the RLUIPA claimant is able to engage in other forms of religious exercise." *Holt*, 574 U.S. at 862.

As to the appropriate defendants for these claims, the plaintiff alleges that four of the seven original defendants—Commissioner Parker, Reverend Darnell, Warden Washburn, and Chaplain Shonebarger—"persist[] in denying [him] the Khufain." (Doc. No. 1 at 5.) The court will therefore allow the plaintiff's Khufain-based claims to proceed against these four defendants.

### c.    Ban on "Islamic Attire"

Third, the plaintiff alleges that his religious practices require him to wear, during prayer, a "Towel-like Headdress" called a "Kifiya" and an "Agal" for holding the Kifiya. (Doc. No. 1 at 8.) The defendants, however, have allegedly implemented a "total[] ban[]" on "Islamic attire worn in Salah [prayer] designed to cover the arms and other body parts from materials that are in accordance with Islamic requirements for dress while in Salah." (*Id.* at 7–8.) At this early stage in the proceedings, the court concludes that the plaintiff has stated colorable claims under the Free Exercise Clause and RLUIPA on this basis.

As to the appropriate defendants for these claims, the plaintiff alleges that the following six defendants banned Islamic attire in prayer at Trousdale Turner: the TDOC, Commissioner Parker, Reverend Darnell, CoreCivic, Warden Washburn, and Chaplain Shonebarger. (Doc. No. 1 at 7–8.) And for the reasons expressed above in the discussion of the plaintiff's conjugal-visit claim, the court will allow this claim to proceed under RLUIPA against these six defendants.

As to Plaintiff's claim under the Free Exercise Clause, however, the court must dismiss the TDOC as a party. That is because "[t]he TDOC is not a 'person' within the meaning of [Section] 1983, and is therefore not a proper defendant" to the plaintiff's Free Exercise Clause claim. *See Hix v. Tenn. Dep't of Corrs.*, 196 F. App'x 350, 355 (6th Cir. 2006) (citations omitted). Meanwhile, private entities acting under color of state law, like CoreCivic, may be liable under Section 1983 where a plaintiff alleges that it had a "policy or custom" that was "the moving force behind" a constitutional deprivation. *Savoie v. Martin*, 673 F.3d 488, 494 (6th Cir. 2012) (quoting *Miller v. Sanilac Cty.*, 606 F.3d 240, 255 (6th Cir. 2010)). Liberally construing the complaint in the plaintiff's favor, he has made such an allegation against CoreCivic here. Accordingly, this Free Exercise Clause claim may proceed against Commissioner Parker, Reverend Darnell, CoreCivic, Warden Washburn, and Chaplain Shonebarger.

#### d.    Traditional Halal Foods During Ramadan and Id Feasts

Fourth, the plaintiff alleges that his religious beliefs require him to eat specific unprocessed foods for the Id Ul Fitr feast, the Id Ul Adha feast, and before and after fasting every day during Ramadan. (Doc. No. 1 at 3.) The foods include dates, whole milk, honey, Halal meats, vegetables, and fruits. (*Id.* at 4, 6.) The plaintiff alleges that his requests to eat these foods for Ramadan and the Id feasts were denied in both 2018 and 2019. (*Id.* at 5–6; Doc. No. 4 at 1, 3.) The court concludes that these allegations state a claim under RLUIPA, but not the Free-Exercise Clause.

Under the First Amendment, "'prison administrators must provide an adequate diet without violating the inmate's religious dietary restrictions.'" *Colvin*, 605 F.3d at 290 (quoting *Alexander v. Carrick*, 31 F. App'x 176, 179 (6th Cir. 2002)). "'If the prisoner's diet . . . is sufficient to sustain the prisoner in good health, no constitutional right has been violated.'" *Id.* (quoting *Alexander*, 31 F. App'x at 179). Here, importantly, the plaintiff does not allege that the failure to provide him the specific traditional foods outlined above during Ramadan and the Id feasts denied him adequate nutrition. As this court has previously noted, a prisoner does not have a constitutional right "to choose the items on his menu." *Spight v. Davidson*, 3:14-mc-0793, 2014 WL 2811829, at *2 (M.D. Tenn. June 23, 2014) (citing *Spies v. Voinovich*, 173 F.3d 398, 406 (6th Cir. 1999)). Accordingly, the plaintiff fails to state a Free-Exercise claim on this basis.

RLUIPA, however, provides "greater protection" than the First Amendment. *Holt*, 574 U.S. at 862. And in circumstances similar to those alleged by the plaintiff, the Sixth Circuit has held that prison administrators' actions were "subject to scrutiny under RLUIPA." *Haight*, 763 F.3d at 564. In *Haight*, a group of prisoners demonstrated a sincere belief "that a meal accompanied by corn pemmican and buffalo meat is part of" a powwow, which is "a religious ceremony for members of this Native American Church." *Id.* The prison barred access to these foods. *Id.* at 565.

In doing so, the Court held, the prison impermissibly "'effectively bar[red]' the inmates from this religious practice and force[d] them to 'modify [their] behavior' by performing less-than-complete powwows with less-than-complete meals." *Id.* Here, as in *Haight*, the plaintiff alleges that eating specific foods is a part of his "religious exercise." The plaintiff's RLUIPA claim based on this belief, therefore, will proceed for further development.

In the original complaint, the plaintiff alleges that the following six defendants denied him specific traditional foods during Ramadan and the Id feasts: the TDOC, Commissioner Parker, CoreCivic, Reverend Darnell, Warden Washburn, and Chaplain Shonebarger. (Doc. No. 1 at 6.) And in the first motion to amend, the plaintiff expands on some of the factual allegations supporting this claim (Doc. No. 4 at 3) while listing six additional defendants in the caption (*id.* at 2). But the plaintiff specifically connects only one of these additional defendants to this claim by alleging that Chaplain Simic was present at the Id feasts. (*Id.*) Accordingly, the court will allow this RLUIPA claim to proceed against these seven defendants, but not the other defendants listed in the caption of the plaintiff's first motion to amend. *See Gilmore v. Corr. Corp. of. Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) (citing *Flagg Bros. v. Brooks*, 436 U.S. 149, 155–57 (1978)) ("Merely listing names in the caption of the complaint and alleging constitutional violations in the body of the complaint is not enough to sustain recovery under § 1983.")

### e.     Monthly Halal Meats

Fifth, in addition to his allegations regarding specific traditional foods during Ramadan and the Id feasts, the plaintiff alleges that he has requested to purchase "Halal meats every month." (Doc. No. 1 at 6.) These requests have allegedly been denied, forcing the plaintiff to purchase Haram beef and chicken products. (*Id.*) But the Sixth Circuit has held that a prisoner's alleged lack of access to Halal meats, in general, fails to state a claim under both the Free Exercise Clause and

RLUIPA. *Robinson v. Jackson*, 615 F. App'x 310, 313–14 (6th Cir. 2015). That is because "Muslim prisoners do not have a right under the First Amendment or the RLUIPA to be provided [H]alal meat entrees; rather, a correctional facility need only provide Muslim prisoners with food that is not 'haram' (impermissible)." *Davis v. Heyns*, No. 17-1268, 2017 WL 8231366, at *3 (6th Cir. Oct. 16, 2017) (quoting *Robinson*, 615 F. App'x at 313–14). Accordingly, the plaintiff fails to state a claim based on the alleged denial of his requests for monthly Halal meats.

### f.  Prayer Oil

Sixth, and finally, the plaintiff alleges that "traditional Islamic practices" require him to purchase prayer oil from an Islamic vendor but that, instead, he has been forced to buy prayer oil from a Christian vendor called Union Supply or an "unislamic" vendor called Access. (Doc. No. 1 at 7, 14.) Applying the standards set forth above, the court concludes that the plaintiff has stated a colorable claim on this basis under both the Free Exercise Clause and RLUIPA. *See Coleman v. Jabe*, No. 7:11cv00518, 2012 WL 7801722, at *13–14 (W.D. Va. Dec. 26, 2012) (finding that a plaintiff "made a sufficient showing that his right to freely exercise his religion [was] substantially burdened by having to purchase religious accoutrements, including [Islamic] prayer oil, from only" a vendor that allegedly "[sold] swine and idols and [took] interest"); *Sargent v. Long*, No. 1:17-CV-12 NAB, 2017 WL 3393821, at *2 (E.D. Mo. Aug. 4, 2017 (allowing the plaintiff to proceed with First Amendment and RLUIPA claims based on the "alleged failure to allow plaintiff to receive religious oil donations (or the right to purchase religious oil) from a valid Islamic vendor").

The plaintiff alleges that the following six defendants "forced [him] to purchase Islamic prayer oil" from Union Supply or Access: the TDOC, Commissioner Parker, Reverend Darnell, CoreCivic, Warden Washburn, and Chaplain Shonebarger. (Doc. No. 1 at 7, 14.) This claim may proceed against these six defendants under RLUIPA. And because the TDOC is not a "person" for

Section 1983 purposes, this claim may proceed against all of the named defendants except for the TDOC under the Free Exercise Clause.

## 2. Establishment Clause / Equal Protection Clause

"The Establishment Clause of the First Amendment prohibits the enactment of any law 'respecting an establishment of religion.'" *Maye*, 915 F.3d at 1084 (quoting U.S. Const. amend. I). "'The clearest command of the Establishment Clause is that one religious denomination cannot be officially preferred over another.'" *Id.* (quoting *Larson v. Valente*, 456 U.S. 228, 244 (1982)). "[A]n official who 'confers [a] privileged status on any particular religious sect' or 'singles out [a] bona fide faith for disadvantageous treatment' violates the Establishment Clause." *Id.* (quoting *Cutter v. Wilkinson*, 544 U.S. 709, 724 (2005)).

"The Equal Protection Clause of the Fourteenth Amendment," meanwhile, "provides that a state may not 'deny to any person within its jurisdiction the equal protection of the laws.'" *Id.* at 1085 (quoting U.S. Const. amend. XIV, § 1). This is "in essence 'a direction that all persons similarly situated should be treated alike.'" *Robinson v. Jackson*, 615 F. App'x 310, 314 (6th Cir. 2015) (quoting *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)). But "to establish an equal protection violation, a plaintiff must establish more than differential treatment alone—a discriminatory intent or purpose is required." *Maye*, 915 F.3d at 1085 (citing *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 264–65 (1977)). Thus, the plaintiff may state an equal protection claim by alleging "that (1) he was treated disparately from similarly situated prisoners, and (2) the disparate treatment is the result of intentional and purposeful discrimination." *Davis*, 2017 WL 8231366, at *4 (citing *Robinson*, 615 F. App'x at 314–15).

Here, the plaintiff alleges that Muslim inmates at Trousdale Turner receive differential treatment from Christian inmates in three ways, as discussed below.

### a. Restriction on Donation of Islamic Religious Items

First, the plaintiff alleges that the defendants "show[] special treatment[]" to Christian inmates by allowing Christian organizations to donate outside items, including religious meals, while denying Muslim organizations the ability to donate religious items, including traditional Halal foods, Islamic prayer oil, and Halal hygiene products. (Doc. No. 1 at 6, 13.) Based on this alleged differential treatment, the plaintiff asserts claims under the Establishment Clause and the Equal Protection Clause. (*Id.*)

Taking the plaintiff's allegations as true and applying the standards set forth above, the court concludes that the plaintiff has stated a claim under both constitutional provisions. *See Lindell v. Casperson*, 360 F. Supp. 2d 932, 958 (W.D. Wis. 2005) (citing *Native Am. Council of Tribes v. Solem*, 691 F.2d 382, 384 (8th Cir. 1982)) ("The denial of a privilege to adherents of one religion while granting it to others is discrimination on the basis of religion in violation of the equal protection clause of the Constitution."); *cf. Kaufman v. Karlen*, No. 06-C-205-C, 2007 WL 1821098, at *12 (W.D. Wis. June 21, 2007) (granting summary judgment to the defendants on a former prisoner's Establishment Clause claim where the inmate did not point to evidence that a defendant "treated donations from other religious organizations more favorably than she treated the donation from" the inmate's preferred religious organization).

The plaintiff alleges that the following six defendants showed this special treatment to Christian inmates: the TDOC, Commissioner Parker, Reverend Darnell, CoreCivic, Warden

Washburn, and Chaplain Shonebarger. (Doc. No. 1 at 6, 13.) At this early stage in the proceedings, the court will allow these claims to proceed against all of the named defendants except for the TDOC. *See Hix*, 196 F. App'x at 355 (citations omitted) ("The TDOC is not a 'person' within the meaning of § 1983, and is therefore not a proper defendant.").

### b. Lack of Group Accommodations for Muslim Inmates

Second, the plaintiff asserts just an Establishment Clause claim—not an Equal Protection Clause claim—regarding the alleged differential treatment of group accommodations for Christian and Muslim inmates. The plaintiff alleges that a Christian organization has a "Christian based program pod" at Trousdale Turner, and that there is a "Hebrew/Greek Bible Study Group for Christians." (Doc. No. 1 at 7.) When, in 2018, the plaintiff requested a "Unit for Muslims to be able to practice their religion" and permission to "start a Qur'anic Arabic Studies Group," however, the plaintiff was denied. (*Id.*) According to the plaintiff, he designed this proposed "Unit for Muslims" to "help [Muslim inmates] be able to rehabilitate themselves using Islamic teachings and Islamic college correspondence courses." (Doc. No. 1-1 at 3.) And the plaintiff alleges that Chaplain Sullenberger told him that he "should bunch the Arabic Class in with the Taleem Service," even though the existing service teaches "other aspects" of Islam. (*Id.*)

Again, taking the plaintiff's allegations as true for the purpose of this initial review, the court concludes that the plaintiff has stated a colorable claim on this basis under the Establishment Clause. *See Maye*, 915 F.3d at 1084–85 (finding that an inmate stated an Establishment Clause claim based on the allegation that a defendant "admitted to affording preferential treatment to" one religious sect over another). The plaintiff specifically asserts this claim against certain defendants—the TDOC, CoreCivic, Warden Washburn, Reverend Darnell, and Chaplain Shonebarger (Doc. No. 1 at 7)—and also alleges that Chaplain Simic was involved in the denial

of his request for a Qur'anic Arabic Studies Group (Doc. No. 1-1 at 3). The TDOC will be dismissed as a party to this claim, but the court will allow the claim to proceed against the other five defendants.

### c.    Qur'an Ban

Third, the plaintiff alleges that CoreCivic and Warden Washburn "have a printed memorandum unfairly banning the Qur'an from entering Trousdale Turner", while "allowing the Bible to be ordered from Union Supply." (Doc. No. 1 at 7.) The plaintiff does not bring this claim under the Equal Protection Clause. The court nonetheless concludes that the plaintiff has stated an Establishment Clause claim on this basis against these two defendants. *See Larry v. Goetz*, No. 06-C-197-C, 2006 WL 1495784, at *5 (W.D. Wis. May 18, 2006) ("The act of making available to inmates a Christian text but not an Islamic text might have the effect of endorsing Christianity.").

### 3.    Failure to State a Claim Based on Work Reduction Credits

The plaintiff's last claim, asserted in the second motion to amend, is unrelated to the previous claims. He asserts that CoreCivic, Warden Washburn, the unnamed sheriff of Trousdale County, and Commissioner Parker failed to award him work reduction credits to which he is entitled. (Doc. No. 7 at 1–2; Doc. No. 8 at 1.) In both the motion to amend (Doc. No. 7 at 3) and a motion for a preliminary injunction (Doc. No. 10 at 3), the plaintiff requests that the court enter an order instructing the defendants to award him the proper work reduction credits. But "a prisoner in state custody cannot use a [Section] 1983 action to challenge 'the fact or duration of his confinement.'" *Wershe v. Combs*, 763 F.3d 500, 504 (6th Cir. 2014) (quoting *Wilkinson v. Dotson*, 544 U.S. 74, 78 (2005)). "Where," as here, "the relief sought is 'a determination that he is entitled to immediate release or a speedier release from that imprisonment,' the prisoner must pursue relief

through a writ of habeas corpus, not through [Section] 1983." *Id.* (quoting *Preiser v. Rodriguez*, 411 U.S. 475, 489 (1973)). Accordingly, the plaintiff fails to state a claim under Section 1983 for the alleged failure to award him the proper work reduction credits, and his motion for a preliminary injunction (Doc. No. 10) will be denied. The plaintiff's request for a sentence reduction in the original complaint (Doc. No. 1 at 15) will also be denied for this reason.

### 4. Lack of Standing to Bring Claims on Behalf of Other Inmates

Finally, the court notes that there is a set of declarations from sixteen other inmates, aside from the plaintiff, attached to the original complaint. (*See* Doc. Nos. 1-2 to 1-18.) These declarations repeat many of the allegations in the complaint, and assert that Trousdale Turner's alleged ban on Islamic attire worn during prayer substantially burdens the exercise of the inmates' religious beliefs. To the extent that the plaintiff is attempting to bring claims on behalf of these or any other inmates, however, he does not have standing to do so. *See Dodson v. Wilkinson*, 304 F. App'x 434, 438 (6th Cir. 2008) (quoting *Newson v. Norris*, 888 F.2d 371, 381 (6th Cir. 1989)) (noting that prisoners "lack[] standing to assert the constitutional rights of other prisoners").

## IV. Conclusion

For all of these reasons, the court concludes that the plaintiff has stated claims based on the alleged denial of his religious freedoms at Trousdale Turner Correctional Center under the Free Exercise Clause, RLUIPA, the Establishment Clause, and the Equal Protection Clause. These claims will be referred to the Magistrate Judge for further proceedings. A specific list of the remaining claims and defendants, consistent with the analysis above, will be provided in an accompanying order.

ALETA A. TRAUGER
United States District Judge